NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4008-19

VERA BITTENCOURT,

     Plaintiff-Respondent,

v.

SARACENO PROPERTIES, INC.,

     Defendant,

and

TOWNSHIP OF VERONA,

     Defendant-Respondent,

and

COUNTY OF ESSEX,

     Defendant-Appellant.

_____

         Submitted May 11, 2021 – Decided May 26, 2021

         Before Judges Mawla and Natali.

         On appeal from the Superior Court of New Jersey, Law
         Division, Essex County, Docket No. L-9352-19.

Courtney M. Gaccione, County Counsel, attorney for appellant (Handel T. Destinvil, Assistant County Counsel, on the briefs).

Lord, Kobrin, Alvarez & Fattell, LLC, attorneys for respondent Vera Bittencourt (Paula C. Nunes and Craig J. Kobrin, on the brief).

PER CURIAM

Defendant County of Essex appeals from a June 29, 2020 Law Division order that granted plaintiff Vera Bittencourt's motion for leave to file a late tort claim notice pursuant to N.J.S.A. 59:8-9 of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 14-4 (TCA). Because we agree with defendant that the court erred in finding that plaintiff established extraordinary circumstances warranting the filing of the late notice, we reverse.

I.

In evaluating the issues raised on appeal, we have assumed all facts alleged by plaintiff to be true and have given her the benefit of all inferences from the motion record. Feinberg v. N.J. Dep't of Env't Prot., 137 N.J. 126, 129 (1994). On June 10, 2019, plaintiff fell and injured herself while walking her dog on a hiking trail in Essex County. She was transported by ambulance to a hospital for treatment, released after two days, and received continued medical care due to a lumbar facture. Plaintiff stated that she "was homebound for

2

approximately [five] months and unable to leave [her] house except for medical treatment and doctor visits."

On November 6, 2019, plaintiff retained counsel and filed a notice of claim with the defendant on November 8, 2019, approximately 152 days after the accrual of her cause of action. On December 23, 2019, plaintiff filed a complaint against defendant, Saraceno Properties, Inc., Township of Verona, and various fictitious entities alleging they were careless and negligent by: 1) not "keep[ing] the premises in a safe condition"; 2) "not exercis[ing] proper care"; 3) "caus[ing] a dangerous and hazardous condition to exist"; and 4) "allow[ing] a nuisance to exist."[1]

Defendant filed a motion to dismiss and, contrary to the express provisions of N.J.S.A. 59:8-9,[2] plaintiff's counsel submitted an affidavit in which he explained that plaintiff's notice was not timely filed because of a "dispute and . . . material question" as to the ownership of the property where she fell.

---

[1] In a separate order filed in February 2020, the court dismissed plaintiff's claim against Saraceno Properties, Inc. and the Township of Verona without prejudice.

[2] N.J.S.A. 59:8-9 provides that application "to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for [her] failure to file notice of claim within the period of time prescribed by section 59:8-8." (Emphasis added).

3

Despite her failure to comply with N.J.S.A. 59:8-9, the court adjourned the motion to permit plaintiff to submit a compliant affidavit.

Plaintiff later submitted an unsworn affidavit in which she "certif[ied]" that she was "unaware who owned the property where [she] was walking" and "[t]here [were] no signs in the area indicating any information" about the property owner. While homebound, plaintiff stated she "had not been able to handle anything except focusing on . . . keeping [her] medical appointments with [the] help of [her] daughter." Plaintiff also stated she became "worried" as to how her continuing medical bills would be paid, and as her pain continued, she "knew [she] was going to . . . need assistance[] with the handling of all [her] medical bills."

She also explained that English is her second language, and that the language barrier "ma[de] it more difficult for [her] to learn the procedures or how things are handled here in the United States." Finally, she stated she had "absolutely no understanding of the laws or statutes that are imposed in any civil matter . . . [and has] a basic level of education from [her] country."

On June 29, 2020, the court denied defendant's motion to dismiss and permitted plaintiff to file and serve a late notice of claim. In the court's corresponding statement of reasons, it noted that the area where plaintiff fell

was unmarked, she had a language barrier, and she was homebound for five months. The court also found that plaintiff was "unfamiliar with [the legal] procedures and practices in this country" and concluded this was not a situation where plaintiff was merely ignorant of the laws or where it was "ignorance and ambivalence combined."

The court also noted plaintiff's notice to defendant was only approximately sixty days late, the delay was "not a substantially long period [of] time," and defendant was not substantially prejudiced by the late notice. The court considered plaintiff's reasons in the "aggregate" and concluded they constituted extraordinary circumstances.

On appeal, defendant argues the court erred in concluding that plaintiff demonstrated extraordinary circumstances. Specifically, defendant contends that plaintiff failed to offer competent medical proofs excusing her belated notice of claim or detail any reasonable efforts she undertook to investigate who owned the property. Defendant also maintains the court erred in finding plaintiff's "ignorance of the law" constituted an extraordinary circumstance and that it would not be substantially prejudiced if plaintiff was permitted to file a late notice.

5

II.

Claims against a public entity for damages are governed by the TCA, which defines the extent of the Legislature's waiver of sovereign immunity and "establishes the procedures by which claims may be brought." Beauchamp v. Amedio, 164 N.J. 111, 116 (2000). Pursuant to the TCA, any plaintiff bringing a tort action against a public entity must file a pre-suit notification of the claim in writing within ninety days of the accrual of the action or else be "forever barred" from asserting that claim. N.J.S.A. 59:8-8.

"The rationale underlying the notice requirement of the [TCA] is to expedite investigation with the hope of reaching a nonjudicial settlement and to allow the public entity prompt access to information about the claim so that it may prepare a defense." Wood v. Cnty. of Burlington, 302 N.J. Super. 371, 375 (App. Div. 1997) (quoting Pilonero v. Twp. of Old Bridge, 236 N.J. Super. 529, 533 (App. Div. 1989)). The TCA, however, permits a late filing under limited circumstances. In this regard, N.J.S.A. 59:8-9 provides that:

> [a] claimant who fails to file notice of his claim within [ninety] days as provided in [N.J.S.A.] 59:8-8 . . . may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity . . . has not been substantially prejudiced thereby.

Prior to the enactment of N.J.S.A. 59:8-9, for a court to grant leave to file a late notice of claim, a claimant needed only to show "sufficient reasons." Lowe v. Zarghami, 158 N.J. 606, 625 (1999). The statute was amended in 1994 to include the extraordinary circumstances standard, which is "more demanding," id. at 625-26, and "raise[d] the bar for the filing of a late notice" of claim, Rogers v. Cape May Cnty. Off. of Pub. Def., 208 N.J. 414, 428 (2011).

The TCA does not define what constitutes "extraordinary circumstances," leaving "for a case-by-case determination . . . whether the reasons given rise to the level of extraordinary on the facts presented." Lowe, 158 N.J. at 626. (internal quotation marks and citation omitted). However, as the Supreme Court explained:

> The Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself. Trial courts, in exercising their statutory authority, and appellate courts, in reviewing those decisions, must ensure that their decisions are faithful to the overall legislative framework in order that the statute's essential purposes be preserved and not eroded through excessive or inappropriate exceptions. Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs

A-4008-19

demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.

[D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 148-49 (2013).]

Medical conditions meet the extraordinary circumstances standard if they are "severe or debilitating" and have a "consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." Id. at 149-50. See also Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010) (noting that "extraordinary circumstances can be found based on the severity of a party's injuries"). The question for the court is whether, when viewed objectively, a severe or debilitating injury impaired the plaintiff's ability to act during the relevant ninety-day period. D.D., 213 N.J. at 151.

We found in Maher v. County of Mercer, that the "circumstances that led to the delay in filing the notice and the motion were truly extraordinary." 384 N.J. Super. 182, 189 (App. Div. 2006). In that case, the plaintiff was hospitalized after receiving a burn, which then caused septic shock, a staph infection, pneumonia, respiratory failure, and memory loss. Id. at 184-85. The plaintiff was placed in an induced coma during her first hospitalization, because she was not expected to live, remained in "extremely poor health," and had repeated admissions to the hospital within the ninety-day period. Id. at 189-90.

See also R.L. v. State-Operated Sch. Dist., 387 N.J. Super. at 334, 341 (App. Div. 2006) (finding extraordinary circumstances when the delay in filing was due to the plaintiff's psychological trauma, which caused him emotional distress, periods of crying, preoccupation with death, and ultimately a hesitancy to reveal his HIV status); but see O'Neill v. City of Newark, 304 N.J. Super. 543, 554 (App. Div. 1997) (finding that a plaintiff preoccupied with recovery and treatment efforts did not sufficiently demonstrate a showing of extraordinary circumstances to justify a delay in filing a timely notice).

In addition to the extraordinary circumstances requirement, a plaintiff will be precluded from filing a late notice of claim if the public entity will be substantially prejudiced. However, "it is the public entity that has the burden of coming forward and of persuasion on the question of [substantial] prejudice." Blank v. City of Elizabeth, 318 N.J. Super. 106, 114 (App. Div. 1999). "The fact of delay alone does not give rise to the assumption of prejudice; the public entity must present a factual basis for the claim of substantial prejudice." Mendez, 416 N.J. Super. at 535 (citing Kleinke v. Ocean City, 147 N.J. Super. 575, 581 (App. Div. 1977)).

"Substantial prejudice must be shown by 'specificity and not by general allegation . . . .'" Id. at 536 (alteration in original) (quoting Blank, 318 N.J.

Super. at 115). A defendant's contention that it was "totally unaware of the accident" and "lost a critical opportunity to engage in a timely investigation" is insufficient to constitute the substantial prejudice requirement under N.J.S.A. 59:8-9. Id. at 535. Substantial prejudice "[g]enerally . . . implies the loss of witnesses, the loss of evidence, fading memories, and the like." Blank, 318 N.J. Super. at 115.

"Pursuant to the express terms of the [TCA], we review a trial court's application of the extraordinary circumstances exception for abuse of discretion." O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019) (citing D.D., 213 N.J. at 147). An abuse of discretion "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks and citation omitted).

Further, we generally examine "more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits . . . ." Feinberg, 137 N.J. at 134 (internal quotation marks omitted) (quoting S.E.W. Friel Co. v. N.J. Tpk. Auth., 73 N.J. 107, 122 (1977)). Therefore, "any doubts" as to whether extraordinary circumstances exist "should be resolved in favor of

10

the application." Lowe, 158 N.J. at 629 (quoting Feinberg, 137 N.J. at 134). The party seeking leave to file a late notice of claim bears the burden of establishing extraordinary circumstances. Ventola v. N.J. Veteran's Mem'l Home, 164 N.J. 74, 80 (2000).

Against this standard of review and the aforementioned substantive legal principles, we agree with defendant that the court erred in finding that plaintiff established extraordinary circumstances justifying her late tort claim notice. Even after plaintiff was given an opportunity to comply with N.J.S.A. 59:8-9, she provided minimal evidence regarding her medical condition during the ninety-day period following her fall. Indeed, in her unsworn affidavit, plaintiff vaguely stated that she was "homebound" and "unable to move," but acknowledged she was able to leave her home for medical treatment. She did not state, however, that she was physically or psychologically incapable of seeking legal advice because her medical condition prevented her from taking appropriate actions to pursue her claim, and the record does not support such a claim in any event. In sum, we are satisfied from the record that plaintiff's condition and circumstances were not so "severe or debilitating" that they had a "consequential impact" on her "ability to pursue redress and attend to the filing of a claim." D.D., 213 N.J. at 149-50.

We reject plaintiff's argument that her lack of knowledge regarding who owned the hiking trail was an extraordinary circumstance justifying her late notice. See Leidy v. Cnty. of Ocean, 398 N.J. Super. 449, 462 (App. Div. 2008). On this point we note that plaintiff's counsel was able to notify defendant only two days after plaintiff contacted him. Her extraordinary circumstances, therefore, rest in her delay in contacting an attorney, not in any difficulty in ascertaining the owner of the property where she fell.

We are also satisfied after our review of the record that plaintiff failed to establish extraordinary circumstances due to her lack of awareness of the notice procedures under the TCA or tort principles generally. See Escalante v. Twp. of Cinnaminson, 283 N.J. Super. 244, 250 (App. Div. 1995) (noting that under the less stringent standard of sufficient reasons, "[i]gnorance of the [ninety]-day statutory requirement, ignorance of one's rights[,] or mere ambivalence by the claimant have never been found to be sufficient reasons on their own to allow late filing"); Hyman Zamft & Manard, L.L.C. v. Cornell, 309 N.J. Super. 586, 593 (App. Div. 1998) (concluding that "ignorance of the law or failure to seek legal advice will not excuse failure to meet the [TCA] filing deadline"). Even accepting that plaintiff, like most individuals, was not versed in TCA's notice requirements, her lack of knowledge of relevant substantive legal principles or

procedures does not qualify as an extraordinary circumstance on the record before the court. As noted, plaintiff was able to contact an attorney, who promptly served defendant with notice of the June 10, 2019 incident.

Likewise, we conclude plaintiff's generalized reference to her language barrier does not support "the conclusion that [her] unfamiliarity with the English language was the cause of her failure to give timely notice . . . ." Blank, 318 N.J. Super. at 110. Indeed, plaintiff did not claim a disabling inability to understand English, but that she was unable to "speak or write [English] perfectly." Moreover, although plaintiff indicated that her language barrier made it more "difficult" to understand the proper legal procedures for filing a notice of claim, the motion record fails to contain competent proofs as to how it specifically affected her ability to pursue her claim, or how she was able to select counsel, contact him, and produce relevant information sufficient for her counsel to file her notice of claim.

Because we conclude that the court erred in finding that plaintiff had established extraordinary circumstances, we need not address the court's decision that defendant was not substantially prejudiced by the late filing. Finally, to the extent we have not addressed any of plaintiff's remaining

13

arguments, it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4008-19